**FILED**
**Oct 01, 2025**
**11:14 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT GRAY

| | |
|---|---|
| **SHERRY GILLIAM,** ) | **Docket No. 2024-20-6739** |
| **Employee,** ) | |
| **v.** ) | |
| **ISABEL TAYLOR IRREVOCABLE** ) | **State File No. 66002-2024** |
| **TRUST,** ) | |
| **Employer,** ) | |
| **And** ) | **Judge Brian K. Addington** |
| **TECHNOLOGY INS. CO.,** ) | |
| **Carrier.** ) | |

---

## EXPEDITED HEARING ORDER

---

The Court held an expedited hearing on September 16, 2025, to determine if Ms. Gilliam is entitled to benefits. Isabel Taylor Irrevocable Trust denied the claim, asserting the alleged injury was idiopathic and that her symptoms were related to a preexisting or post-accident injury. For the reasons below, the Court holds Ms. Gilliam is not entitled to the requested benefits.

## Claim History

Isabel Taylor Irrevocable Trust was created to provide long-term care for Sam Taylor, who was permanently bedridden and has since passed away. Ms. Gilliam worked as his overnight caregiver.

On September 1, 2024, Ms. Gilliam was attending to Mr. Taylor when she alleged that she injured her right knee. She testified that she tripped on an electrical cord but stopped the fall by grabbing a folding door that opened to the bathroom area. Ms. Gilliam introduced a video of the event, which shows her walking out of the camera's view, but her reflection can be seen in a mirror. The reflection is not entirely clear, but it does capture Ms. Gilliam walking into doors, followed by a crashing noise and Ms. Gilliam bending down while using foul language. She then briefly returned within camera range and hobbled away.

1

She reported the injury to Mr. Taylor's daughter, Tiffany Owens, the next morning. A few days later Ms. Gilliam received authorized treatment from an orthopedic urgent-care clinic. There she reported she tripped on a cord and fell into a door but did not hit her knee or leg. She also gave a history of a right-knee injury from a motor vehicle accident and resulting hematoma. The nurse reviewed the x-ray, diagnosed a strain, gave her a knee brace, and assigned sedentary restrictions. Ms. Gilliam was scheduled to return two weeks later.

The Trust denied her claim before the next appointment. Ms. Gilliam testified that the Trust was unable to offer work to accommodate her restrictions and terminated her.

On September 27, Ms. Gilliam went to the emergency room due to a fall at home. She reported she fell when her knee gave out as she tried to stand. She estimated she was unconscious for four hours from the fall. The records noted worsening right-knee pain and bleeding lacerations on her lower right leg. She was told to follow up with the orthopedic clinic.

In October, Ms. Gilliam went to another urgent-care clinic for knee pain. During that appointment, she attributed the pain to the fall at work and reported right-knee swelling and hematoma. The medical records also discussed two lesions on her right shin.

Ms. Gilliams's testimony was hard to follow. She was able to state with certainty that she did not fall at work, but she often contradicted previous hearing and deposition testimony. She vacillated on whether she cut her leg during the incident at work and what, if anything, she fell over. She was unable to state exactly what happened.

Ms. Gilliam also gave conflicting testimony as to what she did after the alleged incident, stating that she cried all night in the bathroom or in the alternative, in a bedroom or her car. She testified that she has not been able to work since the incident.

Ms. Owens testified that she hired Ms. Gilliam as a caregiver for her father.[1] Ms. Gilliam texted her stating she had fallen, but when Ms. Owens arrived at her father's house, she was focused on making sure he was okay and did not notice where the cords lay. She later fired Ms. Gilliam because she was late for work. She did not recall any cords being located where Ms. Gilliam stated she tripped.

Becky Lowe, another Trust employee, testified that she and Ms. Gilliam had a conversation the morning of the alleged event. A video of that conversation shows that Ms.

---

[1] The Trust did not provide any proof as to the relationship between it and Ms. Owens. The Court cannot determine whether Ms. Owens has the authority to speak on behalf of the Trust, although the testimony suggests she hired and fired Ms. Gilliam.

Gilliam said she had hurt her leg years before in a car wreck, that her knee popped during the alleged accident in question, and that she did not fall but ran into the door and caught herself. Ms. Lowe also testified that she did not observe cords running down the side of the bed where Ms. Gilliam stated they were.

Ms. Gilliam explained that she hid the truth about the cause of the incident from Ms. Lowe because Ms. Owen did not want her to discuss incidents at work. She argued that she was entitled to additional medical treatment for her leg, which was still swollen and continually bothers her. She requested temporary disability benefits because she has been unable to work.

The Trust argued that Ms. Gilliam did not prove that a hazard at work caused her injury. It asserted that she suffered an idiopathic injury and was not entitled to benefits.

### Findings of Fact and Conclusions of Law

Ms. Gilliam must show that she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2024). She must show the injury arose primarily out of and in the course and scope of her employment. *Id*. § 50-6-102(12).

An idiopathic injury is one that has an unexplained origin or cause and generally does not arise out of the employment unless "some condition of the employment presents a peculiar or additional hazard." *McCaffery v. Cardinal Logistics*, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *9 (Dec. 10, 2015). An idiopathic injury is compensable "if an employment hazard causes or exacerbates the injury." *Id*. at *10.

The Court heard all the witness testimony and observed the videos of the incident and Ms. Gilliam's conversation with Ms. Lowe. The video of the accident does not show Ms. Lowe tripping but walking into the doors. Further, Ms. Gilliam could not identify the cord she tripped on. She simply does not know or remember.

Further, the video with Ms. Gilliam and Ms. Lowe shows that Ms. Gilliam blamed a previous car accident and said that her knee popped, causing her to run into the door. The Court does not find her explanation for her conflicting descriptions of the incident credible.

Based on the evidence presented at this time, the Court finds that Ms. Gilliam's knee popped for an unexplained reason, and she ran into the door. She did not prove that she tripped over a hazard on the floor. Thus, the Court holds that she is unlikely to prove the injury arose primarily out of and in the course and scope of her employment.

**IT IS ORDERED** as follows:

1. Ms. Gilliam's request for benefits is denied.

2.  The Court sets a status hearing for **December 18, 2025**, at **10:30 a.m. Eastern**. The parties must call **855-543-5044** to participate. Failure to call may result in a determination of the issues without the party's participation.

**ENTERED October 1, 2025.**

Brian K. Addington
_____
**BRIAN K. ADDINGTON, JUDGE**
**Court of Workers' Compensation Claims**

**Appendix**

Exhibits:

1.  Affidavit of Sherry Gilliam
2.  Text messages
3.  Medical records-Appalachian Orthopaedic Associates
4.  Deposition of Sherry Gilliam
5.  (Collective) Photos A-H
6.  (Collective) Criminal Judgments
7.  Medical records- Johnson City Orthopedic Urgent Care
8.  Medical records- Morristown Hamblen Healthcare System
9.  Medical records- Radiology reports
10. Videos

# CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent on October 1, 2025.

| Name | Mail | Email | Service sent to: |
|---|---|---|---|
| David Darnell, Employee's Attorney | | X | david.darnell@deangreer.com |
| Lauren Poole, Employer's Attorney | | X | lmpoole@mijs.com emloh@mijs.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*